UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Burger Management Systems Washington, Inc, et al.,**

    **Plaintiffs,**

    v.

**Seawend, Ltd., et al.,**

    **Defendants.**

Case No. 2:21-cv-1134

Judge Michael H. Watson

Magistrate Judge Vascura

### OPINION AND ORDER

Seawend, Ltd. ("Seawend"), Cedar Enterprises, Inc., J. David Karam, and James M. Karam (collectively, "Defendants") move for summary judgment on Burger Management Systems Washington, Inc's ("Burger") and SMS Holdings Corporation (collectively with Burger, "Plaintiffs") claims against them. ECF No. 53. Plaintiffs move for partial summary judgment on their claims. ECF No. 55. For the following reasons, Defendants' motion is **GRANTED**; Plaintiffs' motion is **DENIED**.

### I. FACTS

Additional facts will be provided in the analysis section, but an overview of the facts is as follows. In early 2017, Seawend operated several Wendy's restaurants as a franchisee. Compl. ¶ 14, ECF No. 1; Ans. ¶ 14, ECF No. 15. In March 2017, Seawend and non-party Wendy's Properties, LLC ("Wendy's") entered into an asset purchase agreement (the "Contract"), in which Wendy's

agreed to buy Seawend's restaurants in Seattle. Contract, ECF No. 1-1. The Contract identifies Cedar Enterprises, Inc., J. David Karam, and James M. Karam as guarantors. *Id.* A few days before closing, Wendy's assigned the Contract to Burger. Assignment, ECF No. 1-2. Wendy's, not Burger, executed the Contract with Seawend. Contract, ECF No. 1-1.

One of the properties covered by the contract is known as Site 1553 (the "Property"). Contract, Ex. A, ECF No. 1-1. In one of the schedules to the Contract, Defendants disclosed a "possible condemnation" of the Property. Disclosure Schedules, Schedule 3.16, ECF No. 1-3. Three years after Seawend and Wendy's closed on the Property, the Property closed following a condemnation so that a transportation company, SoundTransit, could build public transportation. *See* Amber Dep., Ex. V, ECF No. 50-2; Cox Dep. 31:14–17, ECF No. 77-1.

Based on these facts, Plaintiffs allege that Defendants failed to properly disclose the possible condemnation on the Property and assert several claims against Defendants, including breach of contract, fraudulent inducement, and civil conspiracy. Compl., ECF No. 1. According to Plaintiffs, Defendants acted wrongfully when they did not disclose the scope of the possible condemnation and the identity of the possible condemner and when Defendants did not produce documents allegedly related to the possible condemnation. *Id.*

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986). The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citation omitted). Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## III. ANALYSIS

Plaintiffs assert these claims: (1) breach of contract; (2) breach of guarantee; (3) fraudulent inducement; (4) fraudulent or negligent misrepresentation; (5) unjust enrichment; (6) civil conspiracy. Comp. ¶¶ 53–98, ECF No. 1. Defendants move for summary judgment on all claims. ECF No. 53. Plaintiffs move for partial summary judgment on the breach-of-contract and fraud claims. ECF No. 55.

### A. Mootness

The Court ordered the parties to submit supplemental briefing on whether Plaintiffs' claims are moot. Defendants argue that, because Plaintiffs have already been made whole by payments from third parties, their claims are moot. The Court disagrees.

True, "when a party has already been made whole for damage it claims to have suffered, the case is ordinarily moot." *Dryzhenko v. U.S. Citizenship & Immigr. Servs.*, No. 3:10 CV 1393, 2010 WL 4955710, at *1 (N.D. Ohio Nov. 30, 2010) (internal quotation marks and citations omitted). However, even assuming that payment by *third parties* could moot a case, it would not do so here. By Defendants' calculations, Plaintiffs' damages should be offset by $2,665,017.00.

However, Plaintiffs have submitted evidence that their damages exceed that number. *E.g.*, Van Zandt Decl. ¶ 8, ECF No. 75-1; Van Zandt Rep. at 3, ECF No. 1-1. Thus, because Plaintiffs seek to recover from Defendants additional money (that is, money beyond the alleged "offset"), there is still a live controversy.

**B.     Breach of Contract and Breach of Guarantee**

Plaintiffs' breach-of-contract and breach-of-guarantee claims, although against different Defendants, turn on the same question: did Defendants breach the Contract by failing to disclose more information about and documents related to the possible condemnation of the Property?

To establish a claim for breach of contract under Ohio law,[1] Plaintiffs must prove: (1) a contract; (2) performance by Plaintiffs; (3) breach by Defendants; and (4) damages caused by the breach. *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citations omitted). Here Plaintiffs' breach-of-contract claims fail because there is no genuine dispute of material fact that any breach was not the cause of Plaintiffs' damages.

First, Wendy's knew of the possible condemnation— and the identity of the condemnor—before closing. Amber Dep. at 21:4–22:10, ECF No. 50; Ex. V., ECF No. 50-2. When one party to a contract already knows of important facts, that party cannot maintain a breach-of-contract claim against the other party for failing to disclose the same facts. *See Bechtel v. Turner*, 157 N.E.3d 333, 348

---

[1] The parties brief their motions using Ohio law, and the Court agrees that Ohio law governs this case. *See* Contract, § 11.07, ECF No. 1-1.

(Ohio Ct. App., Aug. 13, 2020) (concluding that a party cannot maintain a breach-of-contract claim based on a failure to disclose certain information when the party had independent knowledge of the information). This rule makes sense: if a party knows of some unfavorable information but still chooses to execute a contract, it cannot prove it would have taken a different course but for the other party's nondisclosure (that is, it cannot show the alleged failure to disclose was the proximate cause of any injury). Thus, if *Wendy's* were bringing a breach-of-contract claim against Defendants, there would be no genuine dispute of material fact that any alleged breach did not cause Wendy's damages. *Cf. Elite Designer Homes, Inc. v. Landmark Partners*, No. 22975, 2006 WL 2270832, at *11 (Ohio Ct. App., Aug. 9, 2006) (explaining that the appellee did not breach "any duty of good faith and fair dealing by failing to disclose information already known to appellant.").

Plaintiffs, as assignees, have no greater rights than Wendy's, the assignor. *See Cook v. ProBuild Holdings, Inc.*, 17 N.E.3d 1210, 1219 (Ohio Ct. App., Aug. 14, 2014) ("Under Ohio law, however, an assignee stands in the shoes of the assignor and can obtain no greater rights against another than the assignor had." (quotation marks and citation omitted)). Thus, because Wendy's could not maintain a breach-of-contract claim against Defendants, neither can Plaintiffs.

However, even if Wendy's knowledge could not be imputed to Plaintiffs, Burger itself also knew of a possible condemnation. Defendants disclosed a "possible condemnation" of the Property in one of the schedules to the Contract.

See Disclosure Schedules, Schedule 3.16, ECF No. 1-3. Wendy's assigned the Contract to Burger before closing and, therefore, Burger may be charged with constructive knowledge of the Contract's contents. Thus, for all the reasons Wendy's could not pursue a breach-of-contract claim against Defendants, neither can Plaintiff.

At bottom, Plaintiffs assert breach-of-contract claims for what is, at most, a technical "breach" of the Contract, and there is no genuine dispute of material fact that this technical breach did not cause Plaintiffs' damages. Defendants are therefore entitled to summary judgment on the breach-of-contract claims.

### C. Fraudulent Inducement

To maintain a claim for fraudulent inducement under Ohio law, a plaintiff must allege:

> (1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance.

*Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007) (internal quotation marks and citations omitted).

Again, as an assignee, Plaintiffs have no greater rights than Wendy's. This general maxim is particularly sensible in the fraudulent inducement context. Plaintiffs are not parties to the Contract and, thus, cannot have been fraudulently induced into entering it. Thus, the question is whether *Wendy's*—the party to the

contract—was fraudulently induced and, by extension, whether Wendy's could succeed on a fraudulent inducement claim against Defendants.

Wendy's could not succeed on such a claim because, again, the undisputed facts show that Wendy's already knew about the possible condemnation. Amber Dep. at 21:4–22:10, ECF No. 50; Ex. V., ECF No. 50-2. A party cannot reasonably rely on another party's representation (or omission) if that party has independent knowledge of the at-issue information. See *Bechtel*, 157 N.E.3d at 346 ("A buyer's reliance on a seller's alleged non-disclosure or false representation is not justifiable, as a matter of law, where undisputed evidence demonstrates that the buyer had other sufficient notice of the misrepresented or undisclosed issue before closing[.]" (citation omitted)). Thus, Wendy's could not succeed on a fraudulent inducement claim against Defendants. Because Wendy's could not succeed on a fraudulent inducement claim, neither can Plaintiff.

As a result, Defendants are entitled to summary judgment on the fraudulent inducement claim.

### D. Fraudulent or Negligent Misrepresentation

Plaintiffs also assert a fraudulent or negligent misrepresentation claim against Defendants ("Claim IV"). Compl. ¶¶ 87–90, ECF No. 1. Therein, Plaintiffs allege that Defendants "negligently and/or intentionally made false statements to Plaintiffs and omitted to provide necessary and relevant information [to] Plaintiffs regarding the full extent of the condemnation

proceedings[.]" *Id.* ¶ 88. Upon review of the Amended Complaint, the Court concludes that the "fraudulent misrepresentation" portion of Claim IV is entirely duplicative of Plaintiffs' other claims. Accordingly, that part of Claim IV is **DISMISSED WITH PREJUDICE** as duplicative. *See Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 691 (S.D. Ohio 2018) ("Courts have authority to dismiss duplicative claims sua sponte" (citation omitted)).

As to a claim of "negligent misrepresentation," to succeed on that claim, a plaintiff must show that the defendant: (1) supplied "false information"; (2) "for the guidance of others in their business transactions"; (3) "causing pecuniary loss to the plaintiff"; (4) "while the plaintiff justifiably relied on the information"; and (5) "while the defendant failed to exercise reasonable care in obtaining or communicating the information." *Carter-Jones Lumber Co. v. Oro RB SPE Owner, LLC*, 2021 WL 2592531, at *13 (S.D. Ohio, 2021) (citing Ohio law). Further, a "core requirement" for a negligent misrepresentation claim is "a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction." *Id.* (citation omitted). This "special relationship" "does not exist in ordinary business transactions." *Id.* (citation omitted). Rather, those "in the business of supplying information for the guidance of others typically include attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks." *Id.* (citation omitted).

Here, Plaintiffs' negligent misrepresentation claim fails for two reasons. First, the parties did not have the type of "special relationship" necessary to

sustain a negligent misrepresentation claim. Rather than anything like an attorney-client relationship or any other kind of special relationship, the parties had a typical buyer-seller business relationship. Such a relationship cannot underlie a negligent misrepresentation claim. *Id.* at *13–14 (concluding that a negligent misrepresentation claim failed where the parties had only "the generalized business obligation of good faith and fair dealing that a contract imposes" (cleaned up)).

Secondly, the negligent misrepresentation claim is barred because it is based on the same conduct as the breach-of-contract claim. Ohio law "generally prohibits tort actions arising out of contract claims[.]" *Popovich v. Sony Music Entm't, Inc.*, No. 1:02CV359, 2005 WL 8171846, at *12 (N.D. Ohio Feb. 10, 2005) *modified on reconsideration on other grounds by Popovich v. Sony Music Ent., Inc.*, 2005 WL 8171775 (N.D. Ohio, 2005) (citation omitted). But a "tort action arising out of a breach of contract claim is permitted" if: (1) "the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed"; and (2) "the fraud action includes actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach." *Id.* (quoting Ohio law).

Here, Plaintiffs do not even argue that they suffered any damages attributable to the alleged misrepresentation that are separate from the damages from the alleged breach. Nor do Plaintiffs provide evidentiary support for such

additional damages. Accordingly, Ohio law prohibits the negligent misrepresentation claim.

In sum, Defendants are entitled to summary judgment on the negligent misrepresentation claim.

### E. Unjust Enrichment

When a contract governs the parties' relationship, recovery under an unjust enrichment theory is precluded unless there is evidence of fraud, illegality, or bad faith in the formation of the contract. *See, e.g., Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 222 (6th Cir. 1992) (citing Ohio law); *TLC Realty 1 LLC v. Belfor USA Grp., Inc.*, 166 F. Supp. 3d 919, 930 (S.D. Ohio 2016) (citations omitted).

Here, the parties agree that an express contract governs their relationship. Thus, Plaintiffs could maintain an unjust enrichment claim only if there is evidence of fraud, illegality, or bad faith in the formation of the contract. As reasoned above, Plaintiffs' fraud-based claims fail, and Plaintiffs allege no other type of illegal act or bad faith by Defendant. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' unjust enrichment claim.

### F. Civil Conspiracy

The elements of the Ohio tort of civil conspiracy are: (1) "malicious combination of two or more persons"; (2) "causing injury to another person or property"; and (3) "the existence of an unlawful act independent from the

conspiracy itself." *Williams v. U.S. Bank Shaker Square*, No. 89760, 2008 WL 802523, at *3 (Ohio Ct. App., Mar. 27, 2008) (citation omitted).

For the reasons explained above, all of Plaintiffs' non-conspiracy claims against Defendants fail. Plaintiffs do not point to any other "unlawful act" by Defendants. Thus, there is no genuine issue of material fact that Plaintiffs cannot establish the third element of a civil conspiracy claim. *See Sindell v. Fifth Third Bank*, No. 1:18 CV 479, 2019 WL 3318571, at *9 (N.D. Ohio Jan. 24, 2019) (explaining, at the motion-to-dismiss stage, that "[w]ith no underlying unlawful act, the civil conspiracy claim fails against both Defendants." (citing Ohio law)). Defendants are therefore entitled to summary judgment on the civil conspiracy claim.

## IV. CONCLUSION

For these reasons, Defendants' motion is **GRANTED**; Plaintiffs' motion is **DENIED**. The Clerk shall terminate all pending motions, enter judgment for Defendants, and close the case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**